# PECHMAN LAW GROUP PLLC
### ATTORNEYS AT LAW

**488 MADISON AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 583-9500**
**WWW.PECHMANLAW.COM**

June 7, 2019

**VIA ECF**

Hon. Paul E. Davison
United States Magistrate Judge
United States District Court
Southern District of New York
300 Quarropas Street, Courtroom 420
White Plains, NY 10601

      Re:    *Lopez v. Prado Landscape, LLC. et al.*,
            18 Civ. 5484 (PED) – *Cheeks* Letter-Motion

Dear Judge Davison:

      We represent Enrique Molina Lopez ("Plaintiff" or "Lopez") in the above-referenced wage-and-hour action against Prado Landscape, LLC d/b/a Prado Landscape ("Prado") and Dulio Prado (collectively, "Defendants," and with Lopez, the "Parties"). By this joint letter-motion, the Parties seek approval of their settlement agreement (the "Agreement," enclosed as Exhibit 1), pursuant to which Defendants will pay Lopez $24,510.00 to settle his wage-and-hour claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL"), and the Wage Theft Prevention Act ("WTPA"). For the reasons discussed in detail below, the Court should approve the settlement as fair and reasonable and retain jurisdiction over the action for purposes of enforcing the Agreement.

## FACTUAL AND PROCEDURAL HISTORY

      On March 6, 2018, Lopez sent Defendants a demand letter enclosing a draft complaint. Settlement discussions failed, and Lopez filed his Complaint on June 18, 2018. ECF No. 1. In it, Lopez claims he worked intermittently as a mason at Prado from approximately April 15, 2009, to October 6, 2017. According to Lopez, throughout his employment, he regularly worked 55.5 hours per workweek, Monday to Saturday, ten hours per day with forty-five-minute breaks, from approximately March to December 24. Lopez alleges that he did not work each year from approximately Christmas through February.

      Throughout his employment, Lopez alleges that he performed masonry work at Prado using the company's tools and machinery. Lopez claims Dulio Prado set his work schedules, told him the addresses of worksites to report to, set his hourly wage rate, and handed Lopez his wages in cash every Saturday. The Complaint claims Defendants paid

Lopez $17.00 per hour, including per overtime hour worked, from 2012 through the end of his employment. Lopez further claims Defendants failed to pay him any wages for his last two workweeks. Last, he claims Defendants did not provide him with accurate wage statements at the end of each pay period or with a wage notice.

On August 31, 2018, Defendants filed an Answer generally denying the material allegations in the Complaint. ECF No. 15. Defendants claim that the hours alleged by Lopez to have worked are heavily inflated. According to Defendants, Prado only operates from the end of March, until, at the latest, the end of November each year. Defendants further claim that Prado is not open on Sundays or Holidays, and that there were other dates in which Lopez did not perform services because Prado had no work to offer him. In addition, Defendants claim that Lopez's rate of pay at the start of the statutory period was $15.00 per hour and that Lopez did not receive a raise to $17.00 per hour until approximately 3 years ago. Defendants also claim that persons performing services for Prado begin work at approximately 8:00 a.m. and end work at approximately 6:00 p.m., receive a half hour coffee break at 10:00 a.m., and a 1 hour meal break at 1:00 p.m. Defendants also claim that due to the outside nature of the work, Prado's employees are unable to work in bad weather. Thus, according to Defendants the maximum amount of hours that could be worked in a week at Prado if working during all 6 days is only 51 hours and if working only 5 days is 42.5 hours.

The Parties, through counsel, appeared before District Judge Nelson Stephen Román on October 25, 2018, at which time the Court scheduled discovery. At the conference, defense counsel stated he was not sure whether Lopez had worked at Prado, but the Parties could work together to attempt to resolve the dispute. Thereafter, the Parties engaged in limited discovery, exchanging initial disclosures, document requests, and interrogatories. Plaintiff served discovery responses and a production on Defendants on December 28, 2018. As part of his production, Plaintiff served workers' compensation documents, a 2012 W-2 statement, and several pictures allegedly proving he had worked at Prado. To preserve resources, the Parties agreed to discuss settlement before having Defendants submit written discovery responses.

On October 29, 2018, Lopez's counsel, Pechman Law Group PLLC ("PLG"), sent defense counsel damages calculations, subject to FRE 408, with a settlement demand. In January 2019, the Parties entered into a confidentiality order. *See* ECF No. 26. Pursuant to it, Defendants produced documents in February 2019, including tax returns and bank statements, reflecting their alleged financial difficulties. Afterwards, the Parties agreed to pursue a potential settlement. In this regard, on April 1, 2019, the Parties attended a half-day settlement conference before the Court. At the conference, the Parties discussed at length their claims, defenses, Lopez's damages calculations, Defendants' calculation of potential exposure, and Defendants' financial condition. Following several rounds of extensive arm's length negotiations, the Parties with the help of Your Honor ultimately reached an agreement in principle to settle this matter for $24,510.00, paid over eighteen months. With the Court's help, the Parties ended the conference by stating their settlement terms on the record, which they subsequently reduced to the Agreement.

By Order dated April 3, 2019, District Judge Nelson S. Román referred this matter to this Court for all purposes. ECF No. 31. As discussed with the Court on April 1, 2019, the Parties would submit their Agreement with a joint-letter motion for the Court's review. Accordingly, pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Parties submit this Joint Letter-Motion, with the enclosed executed Agreement, requesting that the Court approve their settlement as fair and reasonable and retain jurisdiction over this action for purposes of enforcing the Agreement.

## THE SETTLEMENT IS FAIR AND REASONABLE

The Agreement resolves bona fide disputes over sharply contested issues, such as Lopez's rate of pay, the number of hours that Lopez worked for Prado, and the periods in the year that Lopez worked for Prado. The Parties accept the Agreement as a fair and reasonable resolution of what otherwise would be an expensive litigation. To avoid additional expenses and uncertainty, especially in light of Defendants' financial difficulties, Defendants will pay Lopez $24,510.00 (the "Settlement Amount"), a fair and reasonable resolution in light of the facts of this case.

Based on Lopez's recollection of his hours worked and pay received, PLG calculated his highest potential wages owed to be $31,284.88. Defendants take issue with the calculation. First, they dispute Lopez's rate of pay, claiming that during the statutory period, his rate of pay was initially only $15.00 per hour before being raised to $17.00 per hour approximately 3 years ago. In addition, Defendants dispute the number of hours Lopez worked, claiming he worked at most 42.5 to 51 hours per workweek. Assuming the trier of fact believed this, Lopez's highest possible unpaid wages would be a range of $3,562.69 (the total if paid at $15.00 per hour for all hours worked) to $4,037.71 (the total if paid at $17.00 per hour for all hours worked) if Lopez worked a total of 42.5 hours per week and a range of $15,675.83 (the total if paid at $15.00 per hour for all hours worked) to $17,765.94 (the total if paid at $17.00 per hour for all hours worked) if Lopez worked a total of 42.5 hours per week. Lopez denies Defendants' allegations, but he acknowledges that there is a risk his damages could be significantly reduced if the case continued and a trier of fact sided with Defendants.

Besides litigation risks, the Parties agreed to settle to avoid costs in light of Defendants' precarious financial condition. At the settlement conference, Defendants shared information reflecting that they have operated Prado at a loss for at least three years and that they lack significant assets against which Lopez could collect on a judgment. Prolonged litigation, especially if it results in a significant judgment against Defendants, could drive them to bankruptcy and would certainly deplete the Settlement Amount. By settling, the Parties are choosing to cut their losses to ensure an outcome they can both accept and control. *See, e.g., Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("In light of defendants' precarious financial condition . . . there is a substantial risk that any judgment plaintiff[] might obtain at trial would prove uncollectable."); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007 (VSB), 2015 WL 9161791, at *1 (S.D.N.Y. Dec. 14, 2015) (approving settlement where amount paid was approximately 16% of plaintiffs' highest potential recovery but defendant faced significant financial difficulties); *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365

(S.D.N.Y. 2013) ("Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable.").

With the Court's help, the Parties agreed Defendants would pay Lopez the Settlement Amount in eighteen (18) monthly installments, the first due thirty days after approval of the Settlement. Ex. 1 § 3(a). Remaining payments are due by the first of each month, with the second payment due on the first of the month following thirty (30) days after the first payment. *Id.* The Agreement's terms are otherwise consistent with *Cheeks*. For example, the release is limited to Lopez's wage-and-hour claims. *Id.* § 1 (stating release of all claims "arising under the [FLSA], the [NYLL], or any other law . . . regulating the payment of wages"). There is no confidentiality or no reemployment provision. *See generally id.* Furthermore, the mutual non-disparagement provision is reasonable because it contains a carve-out allowing Lopez to "provide truthful statements about his experiences litigating this Action, his claims in this Action, and about the resolution of this Action." *Id.* § 8(c); *see also Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) ("[A]lthough the Agreement contains a non-disparagement provision, it includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case.").

As a fair and reasonable compromise negotiated at arm's length, the Agreement contains provisions that help to ensure Defendants pay the Settlement Amount. First, if Defendants default on their payment obligations and fail to cure the default within fourteen calendar days' written notice to defense counsel, they will have to pay the sum of (i) all outstanding installments under the Agreement, including any bounced check fees and (ii) liquidated damages of $8,000.00. Ex. 1 § 21. Second, as part of the settlement, the Parties jointly request the Court retain jurisdiction over this matter for purposes of enforcing the Agreement's terms in the event of such default. *Id.* at Ex. A.

The Settlement Amount is reasonable because, even after deducting attorneys' fees and costs, Lopez will receive $16,000.00. *Id.* § 3. That is, even after attorneys' fees and costs, Lopez will receive approximately 50% of his highest potential unpaid wages if he were fully successful at trial, including almost 100% of his unpaid wages for the three years prior to the filing of the Complaint, the period covered under the FLSA if he were fully successful at trial. Lopez could recover less than this total if Defendants were successful at trial. *See, e.g., Angamarca v. Hud-Moe LLC*, no. 18 Civ. 1334 (RA) (approving settlement where plaintiff recovered approximately 25% of highest possible damages after attorneys' fees) (ECF No. 24); *Beckert v. Ronirubinov*, No. 15 Civ. 1951 (PAE), 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015) (same, and noting lack of documentation and conflicting witness testimony as reason for accepting percentage of highest possible damages as reasonable).

Pursuant to the retainer agreement between Lopez and counsel, PLG's fees are $8,510.00, which equals 33.33% of the Settlement Payment after reimbursement of costs incurred in the prosecution of this action.[1] *Joseph v. Otg Mgmt.*, No. 16 Civ. 2052 (VSB), at

---

[1] Costs incurred are $400.00 for the Court's filing fee and $110.00 for service of process fees. *See* ECF Nos. 9–10 (reflecting $55.00 for service fee per defendant, for total of $110.00).

*4 (S.D.N.Y. June 27, 2017) ("Courts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases."). PLG's lodestar to date is approximately $19,300.00. As such, we believe that the contingency fee in this case is fair and reasonable, particularly because it is lower than the lodestar and because Lopez voluntarily accepts it after having reviewed every term of the Agreement in Spanish, his native language, with counsel, and in the settlement conference.

    We thank the Court for its time and consideration of this matter. If the Court needs any additional information for purposes of *Cheeks* review, please feel free to contact us.

    Respectfully submitted,

    s/ *Gianfranco J. Cuadra*
    Gianfranco J. Cuadra

cc: Matthew Cohen, Esq.

Enclosure